O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

```
JERRY SLYE,                    ) Case No. CV 11-2401-JPR
                               )
            Plaintiff,         )
                               ) MEMORANDUM OPINION AND ORDER
       vs.                     ) AFFIRMING THE COMMISSIONER
                               )
MICHAEL J. ASTRUE,             )
Commissioner of the Social     )
Security Administration,       )
                               )
            Defendant.         )
                               )
```

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed January 19, 2012. The Court has taken the Joint Stipulation under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed and this action is dismissed.

**II.  BACKGROUND**

Plaintiff was born on November 17, 1959. (Administrative Record ("AR") 118.) He has an 11th-grade education. (AR 126.) He claims to have been disabled since January 1, 1999, from injuries sustained when he was shot in the neck during a carjacking. (AR 126, 141, 162-63.)

On March 6, 2008, Plaintiff filed an application for SSI. (AR 108-13.) After Plaintiff's application was denied, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 27, 2009. (AR 28-40.) Plaintiff appeared with counsel and testified on his own behalf. (Id.) On October 13, 2009, the ALJ denied Plaintiff's claim, determining that he had the severe impairments of "degenerative disc disease, facet arthritis in the lumbar spine, status post gunshot wound in left scapular area, status post thoracotomy/sternotomy and chest tubes, left shoulder pain, atypical chest pain, and posttraumatic stress disorder" (AR 21) but was not disabled because he had the residual functional capacity ("RFC")[1] to perform "light work . . . with the following limitations: right hand dominant with left, non-dominant upper extremity limited to occasional reaching overhead or laterally; avoid environments where speech is a critical factor; ability to work with public and adapt to normal workplace stressors; some difficulty with change as long as not drastic changes" (AR 22). The ALJ found, based on the Vocational Expert ("VE")'s testimony, that Plaintiff had the RFC to perform

---

[1] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. 20 C.F.R. § 416.945(a); see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

the job of "office helper." (AR 26.) On January 20, 2011, the Appeals Council denied Plaintiff's request for review. (AR 1-4.) This action followed.

Plaintiff raises one disputed issue: whether the ALJ properly determined that Plaintiff could perform alternative work activity. (J. Stip. at 4.)

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free of legal error and are supported by substantial evidence based on the record as a whole. § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a severe physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

    A.   <u>The Five-Step Evaluation Process</u>

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. § 416.920(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively

presumed and benefits are awarded. § 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient RFC to perform his past work; if so, the claimant is not disabled and the claim is denied. § 416.920(a)(4)(iv). The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work in the national economy. § 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. § 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

    B.    <u>The ALJ's Application Of The Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since the date of his application for SSI.[2] (AR 21.) At step two, the ALJ concluded that Plaintiff "has the following severe impairments: degenerative disc disease, facet arthritis in the lumbar spine, status post gunshot wound in left scapular area, status post thoracotomy/sternotomy and chest tubes, left shoulder pain, atypical chest pain, and posttraumatic stress disorder." (Id.)

---

[2] The ALJ lists this date as "February 8, 2008." (AR 21.) This appears to be a typographical error, however, as the record shows Plaintiff applied for SSI on March 6, 2008. (AR 108.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled any of the impairments in the Listing. (Id.) At step four, the ALJ found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) with the following limitations: right hand dominant with left, non-dominant upper extremity limited to occasional reaching overhead or laterally; avoid environments where speech is a critical factor; ability to work with public and adapt to normal workplace stressors; some difficulty with change as long as not drastic changes." (AR 22.) At step five, the ALJ found that Plaintiff was unable to perform his past work as a truck driver but that he retained the RFC to perform the job of "office helper." (AR 26.)

The ALJ relied on the hearing testimony of the VE in holding that Plaintiff was capable of performing the office helper job. At the hearing the ALJ posed the following hypothetical to the VE:

> Hypothetically we have an individual who can perform light work as normally known by SS but it would be further reduced as follows. He would – with his – You're right-handed, are you not, sir?
>
> [Plaintiff:] Yes.
>
> Okay. [¶] So is the hypothetical person. His left, non-dominant upper extremity would limit him to only occasionally reaching, either above head or laterally. He also should avoid environments where speech would be a critical factor because the hypothetical person, as you've heard this morning with the claimant, has a very

> weak, hoarse voice.  He also would be able to work with
> the public, could adapt to normal workplace stresses and
> would have some difficulties with change, but were they
> not drastic changes could generally handle them
> reasonably.  In that instance this person obviously could
> not perform the claimant's past relevant work.  But could
> he, in your opinion, perform light, unskilled work of any
> nature?

(AR 36-37.)  The VE responded that yes, Plaintiff could perform light, unskilled work.  (AR 37.)  The VE gave the following examples of work Plaintiff would be able to perform:

> The first one is that of an office helper.  The DOT
> number is 239.567-010.  It's considered light per the DOT
> and has an SVP of 2, which is unskilled.  There are
> approximately five to 6,000 jobs in the regional economy
> and when – specifically, the regional economy I'm talking
> about the greater Los Angeles area – nationally there are
> approximately seven to 800,000 nationally.
>
> A second job would be that of a parking lot
> attendant.  DOT number is 915.473-010.  It's also light
> with an SVP of 2, which is unskilled.  There are
> approximately five to 6,000 jobs in the regional economy
> and again, seven to 800,000 nationally.
>
> In both of these jobs they're – as long as you can
> use – it doesn't require bilateral use of the hands.  And
> if it's on an occasional basis I would assume it could be
> used as a helper to the other non-disabled arm.  So [he]
> could perform both jobs.  There is no overhead reaching.

```
          And because these are unskilled jobs, would not – would
          – you know, there would be normal workday stresses.
```
(AR 37-38.)

## V. DISCUSSION

Plaintiff contends that the ALJ erred in finding that he could perform the job of office helper[3] because of two alleged conflicts between the Dictionary of Occupational Titles ("DOT") description of that job and Plaintiff's functional limitations. Plaintiff contends that the office helper job requires "frequent (existing from over 1/3 up to 2/3 of the time) use of both upper extremities to reach," which conflicts with the ALJ's hypothetical to the VE. (J. Stip. at 6.) Additionally, Plaintiff contends that it requires more than minimal speaking, which also conflicts with the hypothetical. (Id.) Plaintiff argues that the ALJ failed to identify and resolve these conflicts between the VE's testimony and the DOT description, thus requiring reversal of the ALJ's decision. (Id. at 7-13.)

An ALJ must ask a hypothetical question to a VE that is based on medical assumptions supported by substantial evidence in the record and that reflects all of the plaintiff's limitations. Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). When a VE provides evidence about the requirements of a job, the ALJ has a responsibility to ask about "any possible conflict" between that evidence and the DOT. See SSR 00-4p, 2000 WL 1898704, at *4;

---

[3] Plaintiff also raises various arguments as to the VE's testimony that he could perform the job of parking lot attendant. Because the ALJ did not find that Plaintiff could perform that job, however, the Court does not address it.

1  Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007)
2  (holding that application of SSR 00-4p is mandatory).  An ALJ's
3  failure to do so is procedural error, although the error is
4  harmless if no actual conflict exists or the VE provided
5  sufficient evidence to support the conclusion.  Id. at 1154 n.19.
6      Regarding the speaking requirement, Plaintiff contends that
7  the ALJ erred in failing to inquire about a potential conflict
8  between the VE's testimony and the DOT with respect to how much
9  Plaintiff would be required to speak in the job of office helper.
10 Although the ALJ did fail to inquire about any potential
11 conflict, the error was harmless.  The ALJ recognized that
12 Plaintiff has "severe voice problems" and that Plaintiff's voice
13 is "hoarse and partially dysphonic," and he included in his
14 hypothetical to the VE that Plaintiff "should avoid environments
15 where speech would be a critical factor."  (AR 24, 31-32, 37,
16 165.)[4]  The DOT states that the "office helper" position requires
17 "talking" only "occasionally" – "up to 1/3 of the time."  DOT
18 239.567-010, available at 1991 WL 672232.  It further states that
19 "Speaking-Signaling" is a "[n]ot [s]ignificant" part of the job.
20 Id.  Thus, speech is not a "critical factor" in that position.
21 Because there is no actual or potential conflict between the DOT
22 description and the VE's testimony or the ALJ's RFC finding, the
23 ALJ's failure to inquire as to potential conflicts was harmless.
24 See Massachi, 486 F.3d at 1154 n.19.
25     Regarding the "reaching" requirement, Plaintiff contends

---

[4] At least one doctor indicated that Plaintiff's voice, while "husky and hoarse, slowed and soft," was also "clear and coherent."  (AR 171.)

that the DOT job description of office helper "require[s] frequently reaching with both arms in all directions" and thus conflicts with the ALJ's RFC assessment limiting him to only occasional reaching and no overhead reaching with the left arm. (J. Stip. at 7.)  Plaintiff is incorrect that the DOT job description requires bilateral reaching.  The DOT definition of "office helper" states that the job requires "frequent" reaching, handling, and fingering but does not specify whether both hands or simply one hand may be used.  See DOT 239.567-010, available at 1991 WL 672232.  The VE testified that "[t]here is no overhead reaching" and the job "doesn't require bilateral use of the hands."  (AR 38.)  Courts have routinely held that a job requiring reaching, handling, or fingering does not necessarily involve the use of both hands absent affirmative evidence to the contrary.  See McConnell v. Astrue, No. EDCV 08-667 JC, 2010 WL 1946728, at *7 (C.D. Cal. May 10, 2010) (collecting cases); Gutierrez v. Astrue, No. CV 10-9690-PJW, 2012 WL 234366, at *2 (C.D. Cal. Jan. 24, 2012) ("[G]enerally speaking, the requirement that an employee frequently use his hands to perform a job does not mean that he has to be able to use both hands.").

Similarly, there is no conflict between the DOT job description requiring "frequent" reaching, see DOT 239.567-010, available at 1991 WL 672232, and Plaintiff's RFC because it is undisputed that Plaintiff is right-handed and has full use of his right arm.  (AR 36, 164 (noting right shoulder flexion is "within normal limits").)  The RFC specifically limited only the "left, non-dominant upper extremity" to occasional reaching; there was no such limitation on the right hand.  (AR 22.)  Similarly, the

hypothetical posed to the VE also limited only the "left, non-dominant upper extremity" to occasional reaching. (AR 37.) Thus, there was no conflict between the RFC and the DOT with respect to the reaching requirement, because Plaintiff could frequently reach with his right hand. See <u>McConnell</u>, 2010 WL 1946728, at *7 ("[S]ince the DOT does not expressly state that the jobs of host and information clerk can be performed by a claimant who lacks the use of one arm, the ALJ appropriately obtained the testimony of a vocational expert to assist in the step five determination."). Any error in not asking about a potential conflict thus was harmless. See <u>Massachi</u>, 486 F.3d at 1154 n.19. Plaintiff's contentions do not warrant remand.

**VI. CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[5] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 9, 2012

**JEAN ROSENBLUTH**
JEAN ROSENBLUTH
U.S. MAGISTRATE JUDGE

---

[5] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."